Nos. 25-3607, 25-5125, 25-5200

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/Cross-Appellant,*

v.

TREVOR JAMES KIRK,

*Defendant-Appellant/Cross-Appellee.*

ERWIN CHEMERINSKY and J.H.,

*Amici Curiae in Support of the Judgment.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

## UNITED STATES' OPENING BRIEF

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney General

ROBERT J. KEENAN
  Acting Deputy Assistant Attorney General

ANDREW G. BRANIFF
JOSHUA R. ZUCKERMAN
KELSEY E. MCGEE
  Attorneys
  Civil Rights Division
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, D.C.  20530
  (202) 532-3803

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT

INTRODUCTION ........................................................................1

JURISDICTION AND BAIL STATUS ......................................3

STATUTORY AUTHORITIES....................................................3

ISSUES PRESENTED ................................................................4

STATEMENT OF THE CASE .....................................................4

   A. Factual Background ..........................................................4

   B. Procedural History ...........................................................6

      1. Kirk is indicted and convicted. ....................................6

      2. The parties enter into a Post-Trial Agreement. ..........8

      3. The United States determines that Kirk's
         conviction was unjust...................................................9

      4. The district court partly rejects the Plea Agreement.................16

      5. The district court denies the United States'
         Rule 48(a) motion to dismiss. .....................................18

SUMMARY OF ARGUMENT ....................................................21

STANDARD OF REVIEW..........................................................23

## TABLE OF CONTENTS (continued):                PAGE

ARGUMENT ....................................................................................................24

I.    The district court should have dismissed
this case as moot. ......................................................................24

    A. The United States' Rule 48(a) motion was
properly before the district court. ....................................24

    B. The United States' Rule 48(a) motion
terminated the controversy between the
United States and Kirk. ...................................................25

II.    The district court was required to grant the United
States' Rule 48(a) motion because it was uncontested. .......28

    A. The district court usurped the Executive Branch's
prosecutorial function when denying the
United States' Rule 48(a) motion. ....................................28

    B. The district court erroneously determined
that it had authority to deny an uncontested
Rule 48(a) motion. ............................................................35

III.    Alternatively, the district court abused its discretion
in determining that dismissal was contrary to the
public interest...........................................................................44

    A. The United States did not harass Kirk or
act in bad faith..................................................................45

    B. The public interest in the separation of powers
required the district court to grant the motion,
not deny it. .......................................................................48

**TABLE OF CONTENTS (continued):**                     **PAGE**

1. The public interest in law enforcement and due process requires that prosecutorial discretion remains with the United States. ................49

2. The post-sentencing timing of the United States' Rule 48(a) motion does not negate the public interest in the United States' prosecutorial discretion. ...................................................................55

   C. The public interest favored dismissal, even in the absence of new evidence. ...........................................60

CONCLUSION ...................................................................................63

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                                                 **PAGE**

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937) ..............................25

Ashwander v. Tennessee Valley Auth., 297 U.S. 288 (1936) .............25-26

Childs v. San Diego Fam. Hous. LLC,
22 F.4th 1092 (9th Cir. 2022)........................................................51

Clay v. United States, 537 U.S. 522 (2003) ............................................24

Flast v. Cohen, 392 U.S. 83 (1968)........................................................25

Garraway v. Ciufo, 113 F.4th 1210 (9th Cir. 2024) ...............................48

Griffith v. Kentucky, 479 U.S. 314 (1987)..............................................33

Griggs v. Provident Consumer Disc. Co., 459 U.S. 56 (1982) ................24

H.C. v. Koppel, 203 F.3d 610 (9th Cir. 2000).........................................26

Heckler v. Chaney, 470 U.S. 821 (1985).................................................41

Hirabayashi v. United States, 828 F.2d 591 (9th Cir. 1987) ............34, 37

I.C.C. v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270 (1987) ....30, 41

In re Aiken Cnty., 725 F.3d 255 (D.C. Cir. 2013) ..................28, 29, 30, 41

In re Brewer, 863 F.3d 861 (D.C. Cir. 2017)..........................................26

In re Di Giorgio, 134 F.3d 971 (9th Cir. 1998) .........................................3

In re Murchison, 349 U.S. 133 (1955)....................................................51

**CASES (continued):** **PAGE**

In re Pattullo, 271 F.3d 898 (9th Cir. 2001) .............................................27

In re Richards, 213 F.3d 773 (3d Cir. 2000) .............................................46

In re United States,
    345 F.3d 450 (7th Cir. 2003) ...................... 31, 32, 40, 43, 48, 50, 52

Kendall v. Stokes, 37 U.S. 524 (1838) ......................................................29

Moore v. Charlotte-Mecklenburg Bd. of Educ.,
    402 U.S. 47 (1971) ...............................................................................27

Morrison v. Olson, 487 U.S. 654 (1988) ..................................................62

Muskrat v. United States, 219 U.S. 346 (1911) .......................................25

Naylor v. Superior Ct. of State of Ariz. in and for Maricopa Cnty.,
    558 F.2d 1363 (9th Cir. 1977) ............................................................27

Rinaldi v. United States, 434 U.S. 22 (1977) ............ 33, 36, 44, 45, 55, 56

Smith v. Arizona, 602 U.S. 779 (2024) ....................................................15

Steffel v. Thompson, 415 U.S. 452 (1974) ...............................................26

Taylor v. Hayes, 418 U.S. 488 (1974) ......................................................51

Trump v. United States, 603 U.S. 593 (2024) ....................................28, 42

United States v. Ammidown, 497 F.2d 615
    (D.C. Cir. 1973) ...........................................................38, 39, 40, 41

United States v. Armstrong, 517 U.S. 456 (1996) .............................40, 41

United States v. Bernard, 42 F.4th 905 (8th Cir. 2022) ............................3

## CASES (continued): PAGE

United States v. Borreo-Isaza, 887 F.2d 1349 (9th Cir. 1989) ...............52

United States v. Burdeau,
    168 F.3d 352 (9th Cir. 1999) ......................24, 25, 34, 56, 57, 58, 59

United States v. Cowan, 524 F.2d 504 (5th Cir. 1975)...........................60

United States v. Dupris, 664 F.2d 169 (8th Cir. 1981)...........................27

United States v. Edmonson, 792 F.2d 1492 (9th Cir. 1986) ...................29

United States v. Fokker Servs. B.V.,
    818 F.3d 733 (D.C. Cir. 2016) ......................................................42

United States v. Garcia-Valenzuela,
    232 F.3d 1003 (9th Cir. 2000) ......................................24, 31, 36, 54

United States v. Giannttasio, 979 F.2d 98 (7th Cir. 1992) .....................59

United States v. Gonzalez,
    58 F.3d 459 (9th Cir. 1995) .................. 30, 36, 42, 43, 45, 47, 52, 54

United States v. Hayden, 860 F.2d 1483 (9th Cir. 1988) ........................42

United States v. Jacobo-Zavala, 241 F.3d 1009 (8th Cir. 2001)........54-55

United States v. Mejia-Cendejas, 29 F.3d 636
    (9th Cir. 1994) (Table)................................................................23-24

United States v. Nixon, 418 U.S. 683 (1974) ..............................29, 40, 41

United States v. Oakes, 11 F.3d 897 (9th Cir. 1993).............................29

United States v. Oberlin, 718 F.2d 894 (9th Cir. 1983) .........................27

United States v. Palmer, 3 F.3d 300 (9th Cir. 1993)..............................35

**CASES (continued):**      **PAGE**

United States v. Pena-Garcia, 505 F.2d 964 (9th Cir. 1974) .................53

United States v. Redondo-Lemos, 955 F.2d 1296 (9th Cir. 1992)...........31

United States v. Salinas, 693 F.2d 348 (5th Cir. 1982) .........................50

United States v. Sanchez-Gomez, 584 U.S. 381 (2018) ..........................26

United States v. Strayer, 846 F.2d 1262 (10th Cir. 1988).......................38

United States v. Strong, 489 F.3d 1055 (9th Cir. 2007).........................26

United States v. Texas, 599 U.S. 670 (2023)....................................49, 50

United States v. Thorpe, 148 F.4th 768 (D.C. Cir. 2025).................33, 59

United States v. Thorpe, No. 13-131-1, 2023 WL 2139399
    (D.D.C. Feb. 21, 2023) ....................................................................59

United States v. Weber, 721 F.2d 266 (9th Cir. 1983)................36, 37, 52

United States v. Welborn, 849 F.2d 980 (5th Cir. 1988) ..................42, 43

Williams v. Pennsylvania, 579 U.S. 1 (2016) ........................................51

Wayte v. United States, 470 U.S. 598 (1985) .........................................29

**CONSTITUTION:**

U.S. Const. Art. II...................................................................................3, 28

U.S. Const. Art. III ................................................................................25, 27

**STATUTES:**                                                    **PAGE**

18 U.S.C. 242 ..........................................................................................4

28 U.S.C. 1291 ........................................................................................3

**RULES:**

Fed. R. Crim. P. 48 ........................................................................ passim

Fed. R. Crim. P. 11 .................................................................................2

**GUIDELINES:**

Sentencing Guidelines § 1B1.1 ............................................................11

Sentencing Guidelines § 2A.2.2 Definition 1...........................................10

**MISCELLANEOUS:**

Charles de Scondat, Baron de Montesquieu,
    The Spirit of the Laws, Book XI, § 6 (1748)...................................51

Congressman John Marshall, Speech to the House of
    Representatives (1800), reprinted in 18 U.S. app. (1820) .............30

Dep't of Justice, Justice Manual § 9-27.230 (2023) ...............................53

The Federalist No. 47 (Madison)...........................................................49

The Federalist No. 51 (Madison)...........................................................49

3B Wright & Miller, Fed. Prac. & Proc. Crim. § 802 (4th ed. 2013) ......34

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully requests oral argument in this matter, which presents jurisdictional issues of first impression and addresses the unresolved question whether district courts may deny uncontested post-sentencing motions under Rule 48(a) of the Federal Rules of Criminal Procedures. Oral argument likely would help the Court resolve these issues.

## INTRODUCTION

The district court—despite lacking jurisdiction for want of a case or controversy—has compelled the United States to prosecute a defendant whom it no longer wishes to prosecute. This Court should correct the district court's usurpation of the United States' prosecutorial authority.

In June 2023, during a dispute with store employees, J.H. assaulted and spat in the face of a loss-prevention employee, which prompted two 911 calls. When defendant Deputy Trevor Kirk and his partner arrived on scene, they intercepted J.H. and her husband as they were attempting to leave the parking lot. Kirk tried to detain J.H., but she swatted his hands away and declared, "Stop! You can't touch me!" In response to J.H.'s continued resistance, Deputy Kirk performed a takedown maneuver and later sprayed J.H.'s face with pepper spray as he struggled to handcuff her.

A jury convicted Kirk of a felony violation of 18 U.S.C. 242, which prohibits unreasonable force by law-enforcement officers. After trial, the United States developed concerns regarding the sufficiency of the evidence and fairness of the trial. The court briefly continued the sentencing hearing so the United States could evaluate the case, but it

1

balked when the parties asked for more time. Under that time constraint, the parties quickly negotiated a post-trial plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). The United States agreed to reduce the conviction to a misdemeanor and recommend a probationary sentence. In exchange, Kirk waived all rights to appeal.

On the United States' motion, the district court downgraded the felony conviction to a misdemeanor by striking the felony allegations from the indictment, but it rejected the jointly proposed probationary sentence. Days later, the court sentenced Kirk to four months' imprisonment, followed by one year of supervised release.

After Kirk appealed his conviction and sentence, the United States filed an *uncontested* motion to dismiss the case under Federal Rule of Criminal Procedure 48(a). The district court denied the motion, reasoning that the motion merely reflected disagreement with the sentence and that the public interest favored protection of the court's sentencing authority.

The district court erred in denying the uncontested Rule 48(a) motion. The motion terminated the controversy between the United States and Kirk, so the district court should have dismissed this case for

2

lack of jurisdiction. Also, the Constitution does not tolerate this judicially mandated prosecution. Article II grants the Executive Branch the sole power to evaluate the public interest and decide when the public interest favors prosecuting (or not prosecuting) crimes. In the alternative, this Court should reverse because even if district courts can deny uncontested Rule 48(a) motions under exceptionally rare circumstances, those circumstances are not present here.

## JURISDICTION AND BAIL STATUS

This Court has jurisdiction under 28 U.S.C. 1291. Although this case is moot, this Court may "exercise appellate jurisdiction merely for the purpose of correcting the error of the lower court in entertaining the suit." *In re Di Giorgio*, 134 F.3d 971, 974 (9th Cir. 1998). Alternatively, the district court's denial of the United States' Rule 48(a) motion is an appealable collateral order. *See United States v. Bernard*, 42 F.4th 905, 908 (8th Cir. 2022).

Kirk is out of custody pending appeal.

## STATUTORY AUTHORITIES

Rule 48 of the Federal Rules of Criminal Procedure is included as an Addendum to this brief.

3

## ISSUES PRESENTED

**1.** Whether this appeal should be dismissed and remanded with instructions for the district court to dismiss this case as moot.

**2.** Whether district courts may deny uncontested motions under Federal Rule of Criminal Procedure 48(a).

**3.** Assuming that district courts do have authority to deny uncontested Rule 48(a) motions, whether the district court abused its discretion in denying the United States' motion in the name of the "public interest."

## STATEMENT OF THE CASE

Kirk was charged with willfully depriving an individual of the right to be free from unreasonable seizure, in violation of 18 U.S.C. 242. A jury convicted him following a three-day trial in February 2025. After Kirk's sentencing, the United States filed an *uncontested* Rule 48(a) motion to dismiss the charge against Kirk. This appeal concerns the district court's denial of that motion.

### A. Factual Background

On June 24, 2023, Los Angeles County Sheriff Deputies Trevor Kirk and Felipe Alejandre responded to a 911 call for a robbery-in-progress at

4

a supermarket in Lancaster, California. JER-190.[1] Store employees reported that two suspects had assaulted and spat in the face of the store's loss-prevention employee. JER-147, 188.[2] Surveillance footage shows that one of the suspects, later identified as J.H., shoulder-checked the employee, lowered her mask, and spat directly in his face. JER-105-108. When the deputies arrived, an employee pointed to the two suspects, who were preparing to flee the scene. JER-181-182. The deputies parked behind the suspects' car to block their escape. After seeing the deputies' vehicle, suspect Damon Barnes (J.H.'s husband) exited the car, approached the deputies, sat on a parking-lot median, and was searched and handcuffed without physical resistance. JER-182. The officers told Barnes that he was not under arrest. JER-182; *see also* JER-156-157.

---

[1] Citations to "JER-_" refer to the Joint Excerpts of Record filed along with this brief, which the United States and Kirk file in order to avoid multiple or duplicate excerpts of record.

[2] The trial evidence included multiple videos that captured Kirk's detention of J.H. For a summary of the video evidence (including a transcript and a series of photo captures taken from the videos), the Government invites the Court to review the United States's briefing available at JER-105-115, 138-139, 145-150, and 156-160.

Meanwhile, J.H. had exited the car and approached the deputies, recording their conduct on her cellphone. JER-183-184. Alejandre identified her as the second robbery suspect. JER-156. Kirk approached J.H. to detain her for investigation. She resisted by swatting Kirk's hands away. JER-178. J.H. yelled, "No! You can't touch me!" "You can't touch me!" JER-157. J.H. then lowered her hand and took a "blading" stance. JER-110.

After J.H. disobeyed his orders to "Stop," Kirk then forced her to the ground, placed one hand on her neck and the other hand on her back. JER-140. J.H. said, "Get your neck off … I can't breathe[.]" JER-158. Kirk promptly released her neck. JER-140-141. J.H. continued to resist, and after approximately 30 seconds of resistance, Kirk resorted to pepper spray. JER-116. The first burst of pepper spray hit J.H.'s side and back, and a second burst hit J.H.'s face. Kirk then handcuffed J.H. JER-158. J.H. eventually was treated for bruises and eye irritation. JER-176. An X-ray of her wrist was negative for fractures. JER-175.

## B. Procedural History

### 1. Kirk is indicted and convicted.

Kirk was charged with violating 18 U.S.C. 242, which prohibits deprivation of rights under color of law. Violations of Section 242

6

ordinarily are misdemeanors but can be felonies if certain aggravating factors apply. The indictment alleged two felony enhancements: that Kirk's actions resulted in "bodily injury" and that he used a "dangerous weapon" (namely, pepper spray). JER-193. According to the indictment, "J.H. suffered a blunt head injury, contusions and abrasions on multiple parts of her body, chemical conjunctivitis, and contact dermatitis, among other [unspecified] physical injuries." JER-191.

The indictment further alleged that Kirk drafted a "misleading [police] report to conceal excessive force." JER-191 (capitalization altered). Kirk "portrayed Victim J.H. as a threat to his physical safety" and "misleadingly claimed … that Victim J.H. assaulted him, attempted to hit him, and took a 'fighting' or 'blading' stance." JER-191-192.

The United States offered Kirk a pre-trial plea agreement that would have allowed him to plead guilty to a misdemeanor violation of Section 242. JER-134. Kirk rejected this offer. *See* JER-127.

The case went to trial, and a jury convicted Kirk. In its February 6, 2025, verdict, the jury found that at least one of the two felony-enhancement factors apply, although as a result of the United States'

7

ambiguous proposed verdict form, the jury did not specify which one. JER-133.

## 2. The parties enter into a Post-Trial Agreement.

After Kirk's conviction, the United States reviewed his case and began to develop doubts as to the sufficiency of the evidence, the fairness of his prosecution and trial, and whether the case even should have been brought. At the United States' request, the district court continued sentencing. JER-232. On April 10, the parties filed a joint stipulation to further continue the sentencing hearing. They explained that the Government needed additional time to review the case. JER-134. The district court denied the motion. JER-233.

Due to this time constraint, the parties accordingly filed a Post-Trial Agreement re: Plea and Sentencing on May 1 (Plea Agreement). The Plea Agreement was entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), meaning that it would bind the court if accepted by the court. JER-129.

Kirk agreed to plead guilty to a misdemeanor violation of Section 242, which is a lesser-included offense of the count charged in the indictment. Kirk also made significant concessions in the Plea

8

Agreement. He agreed to admit under oath that he used unnecessary force against J.H. JER-134. Kirk further offered to waive his right to appeal the misdemeanor conviction and proposed sentence, as well as his right to collaterally attack the misdemeanor conviction and sentence. JER-134-135. In exchange, the United States offered to dismiss the felony charges. JER-135-136.

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties stipulated to a sentence consisting of one year of probation, a fine of up to $5,500, a special assessment of $25, and restitution. JER-135. This approach was consistent with the Government's efforts to "enter into a [pre-trial] plea agreement that would have allowed [Kirk] to plead to a misdemeanor violation of § 242. JER-136.

### 3. The United States determines that Kirk's conviction was unjust.

As the United States continued to review the case, the Probation Office filed a Pre-Sentence Report (PSR). The PSR found that Kirk committed an aggravated assault because he used a "dangerous weapon" (pepper spray) and J.H. suffered a "serious bodily injury" (a broken wrist). JER-139-145. The PSR further found that Kirk obstructed justice

9

by submitting a false police report, necessitating a sentencing enhancement. JER-150.

Shortly after the PSR was filed, the United States completed its review and concluded that the PSR was flawed and that Kirk's conviction was unjust. It explained much of its reasoning in a Position Statement filed in response to the PSR. JER-131-152. The district court found that the Position Statement was motivated by "doubts as to whether a felony conviction matches the severity and circumstances of Defendant's crime" and "whether the jury's verdict is appropriate given the case's circumstances." JER-127.

The Position Statement examined the sufficiency of the evidence and concluded that Kirk did not commit an "aggravated assault." As relevant here, the Sentencing Guidelines define "aggravated assault" as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e.*, not merely to frighten) with that weapon [or] (B) serious bodily injury." Sentencing Guidelines § 2A.2.2 Definition 1. Even assuming that pepper spray is a "dangerous weapon," the Position Statement explained "the evidence in this case does not show that defendant sprayed J.H. in the face with intent to cause bodily injury."

10

JER-60 (quotation marks omitted). Rather, Kirk verbally warned J.H. to stop resisting five times and resorted to pepper spray because of J.H.'s "continued resistance" to his attempts to handcuff her. JER-141. And "[i]n contrast to other excessive-force cases, [Kirk] did not use pepper spray after J.H. was cuffed or otherwise secured." JER-142.

Nor did J.H. suffer a "serious bodily injury." Such an injury involves "extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." JER-143 (citing Sentencing Guidelines § 1B1.1, cmt.1(L)). While J.H. suffered bruising, conjunctivitis, and dermatitis, a medical doctor's expert testimony explained that these injuries were mild. The United States also admitted that it "failed to prove an actual fracture" of J.H.'s wrist. JER-145. The United States "did not allege a wrist injury in the indictment," and its opening statement mentioned only a "potential fracture of her wrist." JER-145. Although J.H.'s doctor testified that wrist pain "can mean" a fracture," she admitted that a wrist x-ray was negative. JER-145. (emphasis omitted).

11

The Position Statement also explained that Kirk did not obstruct justice. The indictment alleged that Kirk drafted a "misleading [police] report to conceal excessive force." JER-191 (capitalization altered). The PSR accordingly applied a two-level enhancement for obstruction of justice, finding that Kirk wrote a misleading police report and thereby attempted to obstruct justice. JER-146. The United States disagreed that Kirk's police report falsely or misleadingly accused J.H. of attempting to hit him or taking a "blading" or "fighting stance." JER-146. Video presented at trial showed that J.H. "swatted away [Kirk's] left arm" and turned to raise her arm at Kirk. JER-95-97. Likewise, the police report did not falsely state that Kirk used his leg to sweep J.H.'s legs out from under her. Video evidence confirmed that he "used his left leg to pin or bock" her. JER-146-148. And even if Kirk's statement about his leg were false, "it still would not warrant an obstruction-of-justice enhancement because it was not 'material' and did not 'significantly obstruct' the investigation or prosecution." JER-150 (citing Sentencing Guidelines § 3C1.1 cmt. 4(G)).

Because there was no "serious bodily injury," "dangerous weapon," or obstruction of justice, the PSR miscalculated the Guidelines range.

12

These miscalculations resulted from "misapplication of the Guidelines, which was urged erroneously by the Government." JER-138. The Position Statement sought to "correct that error" and to challenge calculations that, at the United States' urging, "patently unjust" and "not even close to reasonable." JER-138.

The United States identified additional several indictment and trial errors that undermined the fairness of the criminal proceedings, although it did not mention these in the Position Statement because they were unrelated to the PSR.

First, the indictment contained an irrelevant and unfair reference to J.H.'s race, which had nothing to do with the charged offense. Although the indictment identified J.H. as "Black," JER-189, the United States did not argue at trial that Kirk's use of force was racially motivated.

Second, the jury received an incomplete and sanitized version of J.H.'s conduct. The United States suggested at opening argument that J.H. had no idea why Kirk wanted to detain her. JER-173-188. But J.H. had just assaulted and spat on an employee, JER-105-108, so she almost certainly knew why the police sought to detain her. As the district court

13

found, Kirk had "ample grounds" to detain J.H. JER-24. The store's surveillance footage shows that J.H. shoulder checked an employee, lowered her mask, and spat directly in his face. JER-100-102. But neither party introduced this footage at trial.

Third, the United States made potentially prejudicial allusions to the George Floyd case at trial. The United States' opening argument claimed that Kirk intentionally "pinned [J.H.] to the ground with his knee on her neck, and [she] complained that she could not breath[e]." JER-184. In closing, the United States argued that Kirk's knee was on J.H.'s neck while Kirk was "push[ing] her face into the concrete." JER-163. Upon review of the case, the United States now believes that this may have been untrue and prejudicial. *See* JER-109 (video evidence suggesting that J.H.'s head was not on the ground when Kirk's knee made contract). Indeed, defense counsel was forced to argue in closing that Kirk did not "sit on her like George Floyd." JER-170.

Fourth, the United States may have inadvertently violated the Confrontation Clause. The defense's sole witness was Captain Lorenzo Glenn, who testified as an expert about police use of force. During Captain Glenn's cross-examination, the United States played a recorded

14

interview of Deputy Alejandre suggesting that Kirk should have asked to see J.H.'s hands. JER-179. Although the defense did not object at the time, the Government may move to downgrade or dismiss a charge and vacate a judgment if it thinks an arguable violation of a defendant's Sixth Amendment confrontation rights has occurred. *See Smith v. Arizona*, 602 U.S. 779, 795-796 (2024) (limiting use of out-of-court statements during examination of expert witnesses).

Fifth, the United States potentially overstated the significance of the Los Angeles County Sheriff Office's use-of-force policy as the dispositive factor that dictated whether Kirk violated the Fourth Amendment. JER-40; *see also* JER-97. But the policy is just one relevant factor in the Fourth Amendment Analysis. JER-40.

Sixth, the United States became uncomfortable with its suggestion at closing argument that Kirk detained J.H. because he "didn't like that he was being recorded [and] told what to do." JER-166. But Kirk detained J.H. because she matched the description of a robbery suspect, and he did so immediately after Alejandre identified her as the suspect. JER-156. The closing argument also portrayed J.H. as attempting to de-escalate the situation, but that ignores her legal obligation to comply with

15

officers' lawful orders. In fact, J.H. did the exact opposite of de-escalation, attempting to swat at Kirk and otherwise fight his attempts to detain her. JER-109-115.

### 4. The district court partly rejects the Plea Agreement.

The district court construed the Plea Agreement as an uncontested Rule 48(a) motion to dismiss the felony "allegations in Defendant's indictment that raise his conviction from a misdemeanor to a felony." JER-129-130. At a May 19 hearing, the United States explained why it wanted to dismiss the felony allegations.

The United States had "three different options" in the exercise of its "pure prosecutorial discretion." JER22-23. First, it could "[l]et the felony stand," which it "deemed … to be an unacceptable result" because of "concerns about the ultimate fairness of trial." JER-23, 42. Second, it could enter into a "post trial [sic] agreement for a misdemeanor disposition." JER-24. Third, it could dismiss "the case outright with prejudice and walk away from it." JER-24. In the exercise of its prosecutorial discretion (and consistent with the pre-trial plea offer that Kirk rejected) the United States opted for the misdemeanor disposition, which it later described as the "middle road" between felony charges and

16

dismissing the case outright. JER-70. This "middle road" was appropriate for the reasons discussed above, pp. 9-14, *supra*, and because Kirk's conduct "though excessive, was just barely so." JER-36.

On May 27, the district court partly granted the United States' motion to strike the felony allegations from the indictment. The court found that it could deny uncontested Rule 48(a) motions "if the motion is prompted by considerations clearly contrary to the public interest." JER-125. "The Government believed that Defendant's conduct fell on the lower end of the excessive force spectrum" and "that it prosecuted the case in an improper way—it emphasized potentially misleading evidence and made arguments not fully supported by evidence." JER-126. The court found that the United States's "[d]eveloping and acting on such doubts" about "whether the jury's verdict is appropriate" outweighed "the public interest in upholding jury verdicts." JER-127.

However, the district court denied the United States' motion "to strike the second question in the jury verdict"—whether the bodily-injury or dangerous-weapon sentencing enhancements applied. JER-128. The court doubted that it had the authority to "strike a portion of a jury verdict" under Rule 48. JER-128. Additionally, the court determined

17

that stipulated sentence of one year of probation was insufficient and did "not match the facts of this case." JER-129-130.

On June 3, the district court entered judgment and imposed a four-month prison term. JER-94. Kirk filed his notice of appeal on June 6. JER-236.

### 5. The district court denies the United States' Rule 48(a) motion to dismiss.

The district court's rejection of the Plea Agreement left the United States with two choices: outright dismissal or imprisoning Kirk following what the United States now views as an unfair prosecution and trial. The United States decided to dismiss the case and filed a Rule 48(a) motion. Kirk did not oppose this motion.

At a hearing, the United States emphasized the highly discretionary nature of its decision to move to dismiss. It again cited its "concerns about … the trial as well as ultimately the sufficiency of the evidence." JER-60. The alleged crime "occurred in the course of about a minute-and-a-half," and Kirk acted "in a split second basis [sic] and under sort of emotionally heightened, stressful circumstances." JER-68. The United States acknowledged that "reasonable minds can differ" on this case and continues to believe that its prosecutors did not act in "bad

18

faith" or engage in "any improper behavior." JER-68. Regardless, the United States was concluded that Kirk should not be imprisoned.

The district court denied the United States' motion to dismiss. It acknowledged that it had "only limited discretion to deny Rule 48 motions" but asserted a power to deny "uncontested" motions that are "prompted by considerations clearly contrary to the public interest." JER-84-85. The court explained, "Prior to sentencing, the public interest in deferring to the United States' prosecutorial discretion favors dismissal … But after sentencing, courts must consider the public interest in the protection of the sentencing authority reserved to the judge." JER-85 (cleaned up). A post-sentencing Rule 48(a) motion can align with the public interest if "prompted not by disagreement with the court's sentence, but by newly discovered evidence that causes the Government to question whether the jury's verdict was supported by sufficient proof." JER-85.

According to the court, the United States' motion was "motivated not by the discovery of new evidence or reconsideration of the case, but by disagreement with the Court's decision to sentence Defendant to four months in prison." JER-87. Thus, the United States should have "moved

19

to dismiss the entire case" before sentencing. JER-88. "Since then, nothing has changed. The Government did not uncover any new evidence. Nor did it develop any new reasons to disagree with the jury's verdict." JER-88. Because "nothing of substance ha[d] changed" since sentencing, the court determined that the United States' Rule 48(a) motion is "a direct attempt to override the Court's decision to sentence Defendant to four months in prison" and therefore "contrary to the public interest." JER-89.

The court further claimed that its "reasoning aligns with core separation of powers principles." JER-40. "[O]nce sentencing is complete, as is the case here, the justification for deferring to prosecutorial discretion wanes. At that point, the United States has already exercised its discretion to bring charges, try the case, and advocate for a sentencing position. In other words, [after] the Court imposes a sentence, there is simply not much prosecutorial discretion left to exercise." JER-40. This prosecutorial discretion does not allow the United States "to overturn the Court's four-month prison sentence," thereby "undermining the Judiciary's sentencing authority" in violation

20

of "separations of powers principles" that reflect the public interest. JER-93.

On August 13, Kirk appealed the denial of the United States' motion to dismiss. The United States filed its own appeal the next day. This Court consolidated the two appeals with Kirk's preexisting appeal of his four-month sentence. *See* JER-238.

## SUMMARY OF ARGUMENT

**1.** After the United States filed its uncontested Rule 48(a) motion, the district court should have dismissed this case as moot. Article III provides that the judicial power extends only to cases and controversies. If at any point there ceases to be an actual controversy between the parties, a case is moot and must be dismissed for lack of jurisdiction.

The controversy between the United States and Kirk ended when the United States filed its Rule 48(a) motion to dismiss the remaining misdemeanor charge against Kirk. Because that motion was uncontested, it signified that both parties seek exactly the same outcome. Thus, the motion terminated the controversy and mooted this case. This Court therefore must dismiss this appeal for lack of jurisdiction and remand for the district court to vacate Kirk's conviction.

21

**2.** The district court had no authority to deny the United States' uncontested Rule 48(a) motion. Mootness aside, the separation of powers prevents district courts the power to deny timely, uncontested Rule 48(a) motions. The United States alone has the power to prosecute, and the Judiciary cannot compel the United States to prosecute a case against its will. Because Rule 48(a) applies as long as a prosecution is ongoing, which includes during appellate proceedings, the district court impermissibly forced the United States to continue prosecuting Kirk.

The district court further erred by asserting a power to deny an uncontested Rule 48(a) motion in the name of the "public interest." No appellate court has recognized such a power. And for good reason—the power to determine the public interest in prosecuting (or not prosecuting) a specific case belongs to the United States, not the Judiciary.

**3.** Even if the district court could deny an uncontested Rule 48(a) motion, it abused its discretion in doing so here. There were no concerns that the United States sought to harass Kirk or otherwise was acting in bad faith. The district court gave two reasons for denying the motion, but neither is adequate.

First, it determined that the public interest in adhering to the separation of powers subordinated prosecutorial discretion to judicial sentencing authority. The exact opposite is true. The public interest demands that the United States alone can wield prosecutorial power. The Judiciary is ill-equipped to fight crime, and due process prohibits judges from violating defendants' liberties by wielding prosecutorial powers. The public interest in the United States' prosecutorial discretion endures post-sentencing, until a criminal defendant has exhausted his appeals.

Second, the district court reasoned that the United States did not uncover new evidence justifying the dismissal of the indictment. But there is no requirement that the United States do so prior to filing a post-sentencing Rule 48(a) motion. It is enough that the United States determined through the exercise of its exclusive prosecutorial discretion that continued prosecution was unjust or against the public interest.

## STANDARD OF REVIEW

A mixed standard of review applies. "Whether Rule 48(a) gives the district court discretion to refuse to dismiss an indictment is a question of law" that is reviewed de novo. *United States v. Mejia-Cendejas*, 29 F.3d

23

636 (9th Cir. 1994) (Table). This Court "review[s] a district court's decision whether to grant the motion to dismiss under an abuse of discretion standard." *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir. 2000).

## ARGUMENT

### I. The district court should have dismissed this case as moot.

#### A. The United States' Rule 48(a) motion was properly before the district court.

Although the "filing of a notice of appeal … confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), the district court had authority to grant the United States' Rule 48(a) motion. This Court has held that the United States may file a Rule 48(a) motion (and the district court can grant such a motion) "at any time before this court's mandate is issued and spread by the district court," even if an appeal has been filed. *United States v. Burdeau*, 168 F.3d 352, 359 (9th Cir. 1999). After *Burdeau* was decided, the Supreme Court "reject[ed] the issuance of the appellate court mandate as the 'triggering date'" for finality. *Clay v. United States*, 537 U.S. 522, 524-525 (2003). As the Court explained, "a judgment of

24

conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." *Ibid.* Thus, the United States may file a Rule 48(a) motion until that time. As explained below, pp. 54-59, *infra*, the United States' uncontested Rule 48(a) motion was timely in this case because it was filed even before this appeal was briefed, much less adjudicated, and none of the extraordinarily rare circumstances justifying denial of the motion are present.

### B. The United States' Rule 48(a) motion terminated the controversy between the United States and Kirk.

Article III provides that the federal courts may exercise only "judicial Power" over "Cases" and "Controversies." U.S. Const. art. III, Sec. 2, cl. 1. This case-or-controversy requirement "limit[s] the business of federal courts to questions presented in an adversary context." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). The "judicial power" accordingly encompasses only "the right to determine actual controversies arising between adverse litigants." *Muskrat v. United States*, 219 U.S. 346, 361 (1911). If there is no "dispute between parties who face each other in an adversary proceeding," then there is no case or controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937); *see also Ashwander v.*

*Tennessee Valley Auth.*, 297 U.S. 288, 346 (1936) (Brandeis, J., concurring) ("The Court will not pass upon the constitutionality of legislation in a friendly, non-adversary[] proceeding.").

Article III's case-or-controversy requirement means that if the dispute between the parties ends, the court's exercise of judicial power must end as well. "[A]n actual controversy must be extant at all stages of review." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). "Otherwise, the case is moot and must be dismissed." *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007); *see also United States v. Sanchez-Gomez*, 584 U.S. 381, 385 (2018) (quotation marks omitted) ("A case that becomes moot at any point during the proceedings is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts."); *H.C. v. Koppel*, 203 F.3d 610, 612 (9th Cir. 2000) ("A case is moot where the issues before the court no longer present a live controversy.").

When all parties agree that a case should be dismissed, a court must dismiss the case as moot. For example, a stipulated dismissal in a civil case "resolves all claims before the court" and "leav[es] [the court] without a live Article III case or controversy." *In re Brewer*, 863 F.3d 861,

26

869 (D.C. Cir. 2017). That is because a stipulated dismissal shows that "both litigants desire precisely the same result," so there is "no case or controversy within the meaning of Art. III of the Constitution." *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971). The same reasoning applies in criminal cases. When the United States "does not wish to prosecute" and the "defendant does not wish to be prosecuted[,] … it follows that there is no longer a truly live controversy between the parties." *United States v. Dupris*, 664 F.2d 169, 175 (8th Cir. 1981).

Because the "district court should have dismissed the case as moot," this Court should "dismiss the appeal, vacate the decision and order of the district court" denying the United States' Rule 48(a) motion, "and remand, with directions to dismiss the [case] as moot." *Naylor v. Superior Ct. of State of Ariz. in and for Maricopa Cnty.*, 558 F.2d 1363, 1366 (9th Cir. 1977); *see also In re Pattullo*, 271 F.3d 898, 900 (9th Cir. 2001) ("If a case becomes moot while pending on appeal, it must be dismissed."). The district court therefore must vacate Kirk's conviction on remand. *Cf. United States v. Oberlin*, 718 F.2d 894, 896 (9th Cir. 1983) (holding that a defendant's death during appeal required vacatur of his conviction).

27

II. **The district court was required to grant the United States' Rule 48(a) motion because it was uncontested.**

A. **The district court usurped the Executive Branch's prosecutorial function when denying the United States' Rule 48(a) motion.**

Even if the United States' uncontested Rule 48(a) motion did not moot this case, the district court nevertheless was required to grant the motion because the "prosecution of crimes is a quintessentially executive function." *Trump v. United States*, 603 U.S. 593, 620 (2024) (quotation marks omitted). The district court's refusal to dismiss the indictment compels the United States to prosecute a defendant whom it no longer wants to prosecute. The Constitution does not tolerate such a judicial intrusion on the exclusive domain of the executive branch.

Article II provides that "[t]he executive Power shall be vested in a President" (art. II, Sec. 1, cl. 1), that the President "shall have Power to grant Reprieves and Pardons for Offences against the United States (Sec. 2, cl. 1), and that the President "shall take Care that the Laws be faithfully executed" (Sec. 3). Taken together, those provisions vest the power to prosecute crimes solely with the Executive Branch. *In re Aiken Cnty.*, 725 F.3d 255, 263 (D.C. Cir. 2013). The Supreme Court thus has recognized that, as a general matter, "the Executive Branch has exclusive

28

authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon,* 418 U.S. 683, 693 (1974).

The Executive's "decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "It cannot be disputed that under our system of separation of powers, the decision whether to prosecute, and the decision as to the charge to be filed, rests in the discretion of the Attorney General or his delegates, the United States Attorneys." *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir. 1986). A "district court has no power to deny the United States Attorney his prerogative" of "choos[ing] the statute," if any, "that will be charged." *Ibid.* Nor does a district court have "jurisdiction to review prosecutors' charging decisions, absent proof of discrimination based on suspect characteristics." *United States v. Oakes*, 11 F.3d 897, 899 (9th Cir. 1993).

A "corollary" of "[t]he Executive's exclusive authority" is that "neither the Judicial nor Legislative Branches may directly interfere with the prosecutorial discretion of the Executive by directing the Executive Branch to prosecute particular individuals." *In re Aiken Cnty.*, 725 F.3d at 263; *see also Kendall v. Stokes*, 37 U.S. 524, 601 (1838) ("In a

29

case of this kind, one which thus concerns the proper executive business of the nation, we do indeed deny the power of the judiciary to interfere in advance, and to instruct the executive officer how to act."). Simply put, the Judiciary cannot compel the Executive to prosecute. As John Marshall once explained, the President may "direct that the criminal be prosecuted no further. This is ... the exercise of an indubitable and a constitutional power." *In re Aiken Cnty.*, 725 F.3d at 263 (quoting Congressman John Marshall, Speech to the House of Representatives (1800), reprinted in 18 U.S. app. at 29 (1820)). The Supreme Court more recently admonished that "the refusal to prosecute cannot be the subject of judicial review." *I.C.C. v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987).

This Court likewise has instructed that "[s]eparation-of-powers concerns generally require a district court to defer to the government's decision to seek a dismissal of a criminal charge because a denial of the motion would represent an intrusion upon prosecutorial prerogative. The decision to dismiss an indictment implicates concerns that the Executive is uniquely suited to evaluate, and a district court should be reluctant to deny its request." *United States v. Gonzalez*, 58 F.3d 459, 462 (9th Cir.

30

1995) (citation omitted). Therefore, "[w]hen the government moves to dismiss counts in an indictment, the district court has limited discretion to deny the motion." *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir. 2000); *cf. United States v. Redondo-Lemos*, 955 F.2d 1296, 1299 (9th Cir. 1992) ("[P]lea bargaining decisions," which "are normally made as a result of careful professional judgment" "are particularly ill-suited for broad judicial oversight."). A district court's denial of an uncontested motion to dismiss would endanger criminal defendants' liberties and due-process rights by resulting in the same judge ordering an individual's prosecution and then preside over his trial.

The Seventh Circuit's decision in *In re United States*, 345 F.3d 450 (7th Cir. 2003), reinforces this conclusion. There, as here, a police officer who "assaulted an arrested person" made a plea agreement with the United States. *Id.* at 451. The officer would have pleaded guilty to obstruction of justice in exchange for dismissal of civil-rights charges. The district court asked why the United States agreed to dismiss the civil-rights charges. The United States explained that its "main aim was to get a felony conviction, which would bar [the officer] from remaining in law enforcement, without the risk of a trial." *Ibid.* The district court

31

rejected the plea agreement because it believed the agreement "did not reflect the gravity of the offense." *Ibid.* The officer then pleaded guilty to obstruction of justice without the benefit of an agreement, and the United States filed an uncontested motion to dismiss the remaining charges under Rule 48(a). The district court denied the motion and appointed a special prosecutor because "the government was trying to circumvent [its] sentencing authority." *Ibid.*

The United States sought a writ of mandamus, which the Seventh Circuit granted. The court explained that the "district judge simply disagrees with the Justice Department's exercise of prosecutorial discretion" and "thus is playing U.S. Attorney." *In re United States*, 345 F.3d at 453. So did the district court here. Admittedly, the district court's usurpation of authority in *In re United States* was more extreme because it appointed a special prosecutor—and thus warranted mandamus. But the district court here also erroneously invoked its sentencing authority to justify compelling continued prosecution. That demands reversal.

The Executive Branch's exclusive power to prosecute endures after sentencing, until a defendant exhausts his appeals. That is because a criminal conviction does not become final when the district court imposes

32

a sentence and enters judgment. Rather, a conviction becomes final when a convicted defendant's time to appeal expires or when he exhausts his appellate remedies. *See Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered [and] the availability of appeal exhausted."); *see also United States v. Thorpe*, 148 F.4th 768, 777 (D.C. Cir. 2025) (explaining that the United States can move to dismiss charges "while the case is on direct appeal" but not "after a defendant has exhausted appellate review of his criminal conviction").

As the Supreme Court explained in *Rinaldi v. United States*, 434 U.S. 22 (1977), the Executive Branch retains its prosecutorial discretion to file a timely Rule 48(a) motion as long as a prosecution is pending, *i.e.*, unless and until a conviction all appeals are exhausted. In *Rinaldi*, a defendant previously convicted of state charges was convicted on federal charges arising out of the same conduct. After the conviction, the United States filed an uncontested Rule 48(a) motion, acknowledging that the federal trial violated its policy against multiple prosecutions. *Id.* at 24-25. The district court denied the motion, and the Supreme Court reversed. It explained that the United States had the power to

33

"terminate this prosecution" with the approval of the district court. *Id.* at 30. Likewise, this Court held in *Burdeau* that "[u]nder Federal Rule of Criminal Procedure 48(a), the government has the power to move to dismiss any count of the indictment as long as the defendant's appeal is pending and the decision is therefore not final." *United States v. Burdeau*, 168 F.3d 352, 359 (9th Cir. 1999); *see also* 3B Wright & Miller, *Federal Prac. & Proc. Crim.* § 802 (4th ed. 2013) ("Rule 48(a) continues to apply even after conviction and sentencing while the case is on direct appeal.").

The United States recognizes that Rule 48(a) is not a panacea that allows the United States and defendants to circumvent courts' sentencing authority and expunge criminal judgments *after* they have become final. A district court may deny an *untimely* uncontested Rule 48(a) motion— one that is filed after a defendant exhausts his appellate remedies. As this Court has explained, "There is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended." *Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) (affirming denial of a Rule 48(a) motion filed decades after the unjust wartime conviction of a Japanese-American). Once appellate proceedings have

34

ended, the United States has no further prosecutorial discretion and cannot override the sentencing authority committed to federal courts by Article III and Title 18. The appropriate mechanism to cure an unjust conviction in these finalized cases would be a pardon. But this case is not final because appellate proceedings are ongoing.

The Constitution's separation of powers and the Executive Branch's exclusive Article II power to prosecute (or decline to prosecute) required the district court to grant the United States' Rule 48(a) motion. Its refusal to do so requires reversal.

## B. The district court erroneously determined that it had authority to deny an uncontested Rule 48(a) motion.

The district court reasoned that it could deny an uncontested Rule 48(a) motion that was "contrary to the public interest." JER-84. That is wrong. "[S]eparation of powers concerns prohibit [courts] from reviewing a prosecutor's charging decisions absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right." *United States v. Palmer*, 3 F.3d 300, 305 (9th Cir. 1993). The "public interest" therefore does not allow district courts to second-guess the Executive Branch's exercise of prosecutorial discretion.

35

This Court has "consistently declined to reach" the "question as to whether a district court may ever deny an uncontested Rule 48(a) motion." *Gonzalez*, 58 F.3d at 461; *see also Garcia-Valenzuela*, 232 F.3d at 1008 ("[O]ur circuit has also refrained from stating a general rule."). Instead, this Court has assumed without deciding that district courts may deny uncontested motions that are "clearly contrary to manifest public interest" and reversed denials that failed to meet this lofty standard. *United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983) (quotation marks omitted). That tracks the Supreme Court's approach in *Rinaldi*, where it likewise assumed without deciding that uncontested Rule 48(a) motions can be denied only if "clearly contrary to the public interest." 434 U.S. at 29 n.15.

The district court erred in holding what the Supreme Court and this Court previously had only assumed: that it could "deny Rule 48(a) motions—even when uncontested—'if the motion is prompted by considerations clearly contrary to the public interest.'" JER-84 (quoting *Weber*, 721 F.2d at 268). Its sweeping and unconstitutional assertion of judicial supremacy in the Executive's exclusive prosecutorial domain is unfounded. The appellate cases cited by the district court are inapposite

36

and do not establish judicial authority to deny uncontested Rule 48(a) motions, much less that a district court's view of the "public interest" can justify denial of an uncontested Rule 48(a) motion.

The district began by misconstruing *Weber*. In *Weber*, the United States uncovered new evidence after sentencing and began to doubt the defendant's guilt. It filed an uncontested Rule 48(a) motion to dismiss, but the district court denied the motion. This Court reversed. It expressly "decline[d] to reach the question" "whether the district court has any discretion to deny a motion to dismiss consented to by the defendant" because "the motion for dismissal could not fairly be characterized as clearly contrary to manifest public interest." 721 F.2d at 268 (quotation marks omitted). *Weber* therefore instructs that uncontested, post-sentencing Rule 48(a) motions *must* be granted if motivated by reasonable doubt as to the defendant's guilt. It does not, as the district court suggested, instruct that such motions *may* be granted *only* if motivated by reasonable doubt. JER-91.

The district court also relied on *Hirabayashi,* which also did not hold that a district court's conception of the public interest allows it to deny an uncontested Rule 48(a) motion. That case concerned the timing

37

of Rule 48(a) motions, pp. 33-34, *supra*, and this Court did not decide whether district courts can consider the "public interest" when exercising their discretion or whether any discretion exists where, as here, the Rule 48(a) motion is uncontested.

The district court's citation to *United States v. Strayer*, 846 F.2d 1262 (10th Cir. 1988), also is inapt. *See* JER-85. There, the Tenth Circuit mentioned that Rule 48(a) "is intended to allow courts to consider public interest." *Strayer*, 846 F.2d at 1265. But *Strayer* appears to have concerned a contested motion because the defendant argued in district court that "that the government and the trial court failed to comply with Rule 48(a)." *Id.* at 1264.

Only one appellate case cited by the district court actually found, albeit in gratuitous dicta, that courts could deny uncontested Rule 48(a) motions in the name of the "public interest." In *United States v. Ammidown*, 497 F.2d 615, 617 (D.C. Cir. 1973), the district court "rejected a plea bargain struck between the prosecution and the defense on the ground that the public interest required that the defendant be tried on a greater charge." Specifically, the district court "found the crime was so heinous and the evidence of guilt so overwhelming that the public

38

interest would be ill-served by a judgment of second degree murder" (as opposed to the originally charged first-degree murder). *Id.* at 618. The case went to trial, and the defendant was convicted of first-degree murder. The D.C. Circuit then reversed, holding that district courts must "provide a statement of reasons based on intrusion of the sentencing authority of the judge" when rejecting a Rule 11 plea deal. *Id.* at 623.

Even though "Rule 48(a) [did] not apply," the D.C. Circuit nevertheless asserted a sweeping—and unconstitutional—view of the district court's discretion in an aside. *Ammidown*, 497 F.2d at 619. As the court mused, even "when the defendant concurs in the dismissal," a district court "will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis." *Id.* at 620. The court added that the district court has "the role of guarding against abuse of prosecutorial discretion" and, to that end, should grant a motion to dismiss only if it is "satisfied that the reasons advanced for the proposed dismissal are substantial." *Ibid.* *Ammidown* wrongly teaches that a district court may compel a prosecution if the judge wants to play

39

prosecutor and override determinations of "public interest" that Article II entrusts to the Executive Branch.

*Ammidown* is wrong about the public interest. "The Constitution does place judicially enforceable limits on the powers of the nonjudicial branches of the government—for example, the government may not make its prosecutorial decisions on racially discriminatory grounds—but they are the limits found in the Constitution and thus do not include 'bad faith' and 'against the public interest.'" *In re United States*, 345 F.3d at 453. Nor do those judicially enforceable limits include a requirement that prosecutors provide a "statement of reasons" that is not "conclusory" when exercising their discretion to dismiss a case. *Ammidown*, 497 F.2d at 620. Quite the opposite, any such requirement would—at least absent "clear evidence" of an unconstitutional motive, *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citation omitted)—contradict the principle that the United States is entitled to "confidentiality" in its "decisionmaking process." *Nixon*, 418 U.S. at 705.

In addition, *Ammidown*'s dicta rest on an unsound premise: that when the United States decides no longer to prosecute a case, district courts have freewheeling and standardless authority to prevent what

40

they regard as "abuse" of that prosecutorial discretion. *Ammidown*, 497 F.2d at 620. But "[t]he remedy for … abuses of the power … to decline to prosecute comes in the form of public disapproval, congressional 'retaliation' on other matters, or ultimately impeachment in cases of extreme abuse"—not in the form of judicial override. *In re Aiken Cnty.*, 725 F.3d at 266.

*Ammidown's* dicta also contradict more recent decisions of the Supreme Court. Since *Ammidown* was decided more than half a century ago, the Supreme Court has explained that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," *Nixon*, 418 U.S. at 693; that "the decision of a prosecutor in the Executive Branch not to indict" is "the special province of the Executive Branch," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985); that "the refusal to prosecute cannot be the subject of judicial review," *I.C.C.*, 482 U.S. at 283; and that the exercise of "a prosecutor's discretion" involves "the performance of a core executive constitutional function," *Armstrong*, 517 U.S. at 464-465. It is now beyond clear that the "Executive Branch has exclusive authority and absolute discretion" to decide which crimes to investigate and prosecute" and "possesses

41

authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *Trump*, 603 U.S. at 620 (quotation marks omitted).

In light of those intervening decisions, the D.C. Circuit has held that the "'leave of court' authority in Rule 48(a) . . . confers no new power in the courts to scrutinize and countermand the prosecution's exercise of its traditional authority over charging and enforcement decisions." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 743 (D.C. Cir. 2016). That aligns with this Court's observation that, "[w]hile the judiciary has been authorized to supervise prosecutorial decisions to dismiss, Rule 48(a) was not enacted for the purpose of usurping the traditional role of the prosecutor to determine whether to terminate a pending prosecution." *United States v. Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988).

In sum, there is no appellate support for the district court's creation of a "public interest standard."[3]  The United States, like the Seventh

---

[3] In *Gonzalez*, 58 F.3d at 461, this Court briefly discussed *United States v. Welborn*, 849 F.2d 980 (5th Cir. 1988), and described it as holding that "a district court may deny an uncontested requested only … when the prosecutor's actions clearly indicate a 'betrayal of the public interest.'"

42

Circuit, is "unaware … of any appellate decision that actually upholds a denial of a motion to dismiss a charge on such a basis." *In re United States*, 345 F.3d at 453. The lack of appellate authority for the district court's public-interest theory is "not surprising," *ibid.*, because the Executive Branch alone has the power to determine whether the public interest favors or disfavors a prosecution in a specific case, pp. 27-34, *supra*; pp. 47-54, *infra*.

> The Constitution's "take Care" clause places the power to prosecute in the executive branch …. A judge could not properly refuse to enforce a statute because he thought the legislators were acting in bad faith or that the statute disserved the public interest; it is hard to see, therefore, how he could properly refuse to dismiss a prosecution merely because he was convinced that the prosecutor was acting in bad faith or contrary to the public interest."

*In re United States*, 345 F.3d at 453 (citation omitted).

---

Respectfully, this Court misread *Welborn*. The Rule 48(a) motion in *Welborn* was contested. *Id.* at 984. Thus, the district court was "required to consider … the government's reasons for requesting dismissal." *Id.* at 987. The court added that a "district court errs by not requiring the prosecution to furnish more than a conclusory reason to support its motion" "if a defendant contests dismissal." *Id.* at 985. But if a defendant "does not contest dismissal[,] the presumption of good faith permits the court to dismiss without prejudice." *Ibid.* In any event, *Welborn* is not binding on this Court, and notwithstanding its description of *Welborn*, *Gonzalez* is correctly decided.

43

The district court seemed to recognize its nonexistent authority to deny an uncontested Rule 48(a) motion when granting the United States' motion to dismiss the felony allegations against Kirk. Quoting the above passage, it added that "when a defendant agrees to a Rule 48(a) motion, it is not clear that there are *any circumstances* in which the dismissal would be contrary to the public interest." JER-128. Adhering to the Supreme Court's approach in *Rinaldi* and this Court's consistent approach, it assumed that it could deny such motions under "exceptional circumstances" and granted the United States' motion because dropping the felony allegations was not "clearly contrary to the manifest public interest." JER-128. Yet it later backtracked and invented the authority to deny the United States' uncontested motion to dismiss the misdemeanor charge in the name of the "public interest." JER-198. This Court should reverse.

## III. Alternatively, the district court abused its discretion in determining that dismissal was contrary to the public interest.

Even if the district court had the authority to deny the United States' uncontested Rule 48(a) motion in the name of the "public interest," it abused its discretion in doing so. Any authority the district

44

court has to deny uncontested Rule 48(a) motions applies only "exceptional circumstances." *United States v. Gonzalez*, 58 F.3d 459, 461 (9th Cir. 1995). The district court did not identify any such circumstances, such as harassment or bad faith. Instead, it denied the motion as "contrary to the public interest" for two reasons. JER-201. First, it cited separation-of-powers principles, concluding that despite the United States' absolute prosecutorial discretion during ongoing prosecutions, the Judiciary reigns supreme after a criminal sentence is imposed. JER-198. Second, it observed that the "Government has not uncovered new evidence" or made "new arguments in favor of dismissal." JER-202. Neither of these reasons justifies denying the United States' uncontested motion.

**A. The United States did not harass Kirk or act in bad faith.**

Rule 48(a) provides: "The government may, with leave of court, dismiss an indictment, information, or complaint." "The principal object of [Rule 48(a)'s] 'leave of court' requirement" is "to protect a defendant against prosecutorial harassment." *Rinaldi*, 434 U.S. at 29 n.15. If a prosecutor could dismiss cases unilaterally, he could harass a defendant

45

by "charging, dismissing, and recharging … over the defendant's objection." *Ibid.* Such harassment obviously would be unjust.

Concerns about harassment provide no basis for judicial intervention where a defendant consents to the dismissal, let alone where the United States agrees to dismiss with prejudice to refiling. Reading Rule 48(a) to grant district courts a broader and more open-ended authority to override the United States' prosecutorial decisions and to prolong an otherwise moot controversy would violate the structure of Articles II and III and flout the principle that courts should avoid adopting interpretations of rules that raise serious constitutional problems. Therefore, even if district courts can conduct *any* inquiry into the United States' motive for filing an uncontested Rule 48(a) motion, the inquiry must be limited to confirming that the prosecution has proffered a nonconclusory basis for dismissal, is not seeking dismissal for the purpose of harassment, and has not acted in bad faith. *In re Richards*, 213 F.3d 773, 786-788 (3d Cir. 2000). Thus, with uncontested motions, a court's discretion is "severely cabined" and refusal to dismiss is appropriate "only in the rarest of cases." *Ibid.*

46

The United States has offered a nonconclusory basis for dismissal. As the district court explained when dismissing the felony charge against Kirk, the United States "believed its prosecution of Defendant was, at least in part, unfair" because of "(1) the low level of force used compared to typical excessive force cases; (2) the relatively minor nature of the Victim's injuries; and (3) the circumstances of the case—i.e., that Defendant was responding to a potential armed robbery." JER-126. The district court found that these reasons justified downgrading the charge from a felony to a misdemeanor but nevertheless sentenced Kirk to prison time. The United States explained that these same reasons (and other reasons) instructed that dismissing the case was a more just outcome than prison time. The district court disagreed, but that does not make the United States' basis for dismissal impermissibly conclusory.

There are no concerns of prosecutorial harassment here. Kirk's consent to the United States' Rule 48(a) motion "obviated any concern that the prosecution sought to dismiss Count III for purposes of harassment." *Gonzalez*, 58 F.3d at 463. And even if there were harassment, the appropriate remedy would not be denial of an uncontested Rule 48(a) motion. Rather, "the judge might rightly

47

condition dismissal on its being with prejudice." *In re United States*, 345 at 453.

Nor is there any basis to find that the United States acted in bad faith when filing its Rule 48(a) motion. Even if bad faith, such as improper consideration of a defendant's constitutionally protected traits, could justify denial of an uncontested Rule 48(a) motion, the district court made no finding of bad faith.

## B. The public interest in the separation of powers required the district court to grant the motion, not deny it.

"[P]rotecting the separation of powers" is a "significant public interest[]," *Garraway v. Ciufo*, 113 F.4th 1210, 1217 (9th Cir. 2024), but the district court wrongly held that the separation of powers rendered "the United States' interests … subservient to the Judiciary's" in this case. JER-9. The exact opposite is true. Until Kirk exhausts his appeals, the protection of the separation of powers necessitates judicial deference to the United States' unfettered prosecutorial discretion.

The district court admitted that it was usurping the United States' authority. It opined that because "the Government has already exercised its discretion to bring charges, try the case, and advocate for a sentencing position," "there [was] simply not much prosecutorial discretion left to

48

exercise." JER-202. But there still was *some* "prosecutorial discretion left to exercise." The public interest, not to mention the Constitution, instructs that such discretion belongs to the United States alone, regardless of when it chooses to exercise it.

**1. The public interest in law enforcement and due process requires that prosecutorial discretion remains with the United States.**

"[S]eparate and distinct exercise of the different powers of government" is "essential to the preservation of liberty," *The Federalist No. 51* (Madison), which "requires that the three great departments of power should be separate and distinct," *The Federalist No. 47* (Madison). Because "accumulation of all powers, legislative, executive, and judiciary, in the same hands … may justly be pronounced the very definition of tyranny," *ibid.*, the Constitution draws an inviolable line between the powers of the Executive and those of the Judiciary. That line is clear. "The Executive Branch—not the Judiciary—makes arrests and prosecutes offenses on behalf of the United States." *United States v. Texas*, 599 U.S. 670, 679 (2023).

Vesting prosecutorial power with the United States furthers at least three extremely compelling public interests. First, it advances the

49

public interest in fighting crime. Prosecutors must conduct thorough investigations and "balance many factors when devising arrest and prosecution policies," including "inevitable resource constraints and regularly changing public-safety and public-welfare needs." *Texas*, 599 U.S. at 680. Likewise, "federal criminal statutes that overlap with each other and with state criminal statutes, plea bargaining, and the federal sentencing guidelines themselves combine to lodge enormous charging discretion in the Justice Department." *In re United States*, 345 F.3d at 454. The Judiciary is ill-equipped to assess and weigh these complex considerations that inform the public interest—"to the occasional frustration of judges—yet without giving rise to any judicial remedy." *Ibid.* Accordingly, the Executive, not the Judiciary, is "the best judge of the public interest" and is tasked with balancing the public and individual interests at state in a particular prosecution. *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982). And unlike the Executive, the life-tenured Judiciary is not accountable to the People if they determine that a prosecution is not in the public interest.

Second and relatedly, the public's interest in procedural due process demands that the Executive alone can enforce criminal law. The public

50

has a "substantial … interest" in "honoring the separation of powers." *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092, 1096 (9th Cir. 2022). Allowing the Judiciary to prosecute would imperil the liberty that the Constitution seeks to protect. The Due Process Clause guarantees the right to a fair trial, and "[f]air trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer." *In re Murchison*, 349 U.S. 133, 137 (1955).

If judges could wield prosecutorial powers, they "might behave with violence and oppression" when presiding over the trials of those with whom they had "become embroiled in a running controversy." Charles de Scondat, Baron de Montesquieu, *The Spirit of the Laws*, Book XI, § 6 (1748) (first quote); *Taylor v. Hayes*, 418 U.S. 488, 501 (1974) (second quote). This fusion of judicial and prosecutorial roles violates the Due Process Clause, which does not allow the "risk of actual bias" posed "when a judge earlier had significant, personal involvement as a prosecutor in … the defendant's case," much less a judge's decision to compel charges in a case presently before him. *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016); *see also In re Murchison*, 349 U.S. at 137 ("It would be very strange if our system of law permitted a judge to act as a grand jury and

then try the very persons accused as a result of his investigations.").
Indeed, the "plenary prosecutorial power of the United States branch
safeguards liberty, for, in conjunction with the plenary legislative power
of Congress, it assures that no one can be convicted of a crime without
the concurrence of all three branches … When a judge assumes the power
to prosecute, the number shrinks to two." *In re United States*, 345 F.3d
at 454.

Third, the public interest demands just prosecutions. "[I]t is the
duty of the United States Attorney not simply to prosecute, but to do
justice." *Weber*, 721 F.2d at 268. Justice requires that "the punishment
fits not only the crime, but the individual defendant as well." *United
States v. Borreo-Isaza*, 887 F.2d 1349, 1352 (9th Cir. 1989). While
sentencing judges, of course, must carefully evaluate a defendant's crime
and his unique circumstances at sentencing, the United States also must
continuously do so throughout the pendency of a prosecution. "In
deciding whether to initiate or terminate a prosecution, the prosecutor
has access to, and must take into consideration, a wide range of
information that may not be competent evidence at trial," *Gonzalez*, 58
F.3d at 462, such as the defendant's "personal circumstances" and "the

probable sentence or other consequences if the person is convicted," Dep't of Justice, *Justice Manual* § 9-27.230 (2023).

Here, the United States acted in accordance with the public interest in filing its uncontested Rule 48(a) motion. The United States had "concerns" and "misgivings" about the fairness of Kirk's conviction. JER-71. The United States explained that its "role is to make sure justice gets done." JER-73. Exercising its exclusive prosecutorial discretion, the United States determined that dismissal of all charges was in the public interest. What the district court characterized as an effort "to overrule the Court's sentencing decision," JER-91, was an appropriate exercise of prosecutorial discretion—an effort to make sure that an American citizen is not imprisoned after a prosecution about which the United States had deep qualms.

By overriding this discretion, the district court impermissibly sought to "take on the task of the prosecution" and force the United States to maintain charges it wished to dismiss. *United States v. Pena-Garcia*, 505 F.2d 964 (9th Cir. 1974). Its denial of the United States' uncontested Rule 48(a) motion accordingly undermined not only the public interest in constitutional guarantees of separation of powers and due process but

53

also the public interest in ensuring that prosecutors do justice. That was an abuse of discretion.

This case is similar to the Eighth Circuit's highly instructive decision in *United States v. Jacobo-Zavala*, 241 F.3d 1009 (8th Cir. 2001). There, the parties attempted to enter into a pre-trial plea agreement, under which the United States would dismiss federal charges and defendants would plead guilty to state charges, resulting in a shorter prison sentence. The district court denied leave to dismiss the charges because, as here, "it did not consider the dismissal to be in the public interest." *Id.* at 1011.

The Eighth Circuit reversed. Citing this Court's decisions in *Gonzalez* and *Garcia-Valenzuela*, it explained that the district court abused its discretion in denying leave to dismiss the charges "because it disagreed with the prosecutor's assessment of what penalty the defendants ought to face." *Jacobo-Zavala*, 241 F.3d at 1014. Because the "decision not to prosecute … is central to the executive power," the district court erroneously "exercise[ed] judicial review of the prosecutor's exercise of executive authority." *Id.* at 1012-1014.

54

The same outcome is warranted here. As in *Jacobo-Zavala*, the United States determined that justice favored dismissal of charges because a defendant faced what it viewed as an unfairly lengthy prison sentence. The only material distinction between this case and *Jacobo-Zavala* is the timing of the United States' Rule 48(a) motion, but as explained immediately below, the timing makes no difference.

**2. The post-sentencing timing of the United States' Rule 48(a) motion does not negate the public interest in the United States' prosecutorial discretion.**

The district court denied the United States' Rule 48(a) motion because it determined that after sentencing, there is minimal "public interest in deferring to the Executive's prosecutorial discretion" and a strong public interest in protecting "the sentencing authority reserved to the judge." JER-86. That is incorrect.

*Rinaldi* is controlling. When confronted with a post-sentencing, uncontested Rule 48(a) motion, the Supreme Court assumed without deciding that a district court is "empowered to withhold leave [to dismiss] if the Executive's decision to terminate [a] prosecution clearly disserved the public interest." *Rinaldi*, 434 U.S. at 29. At this stage, the "public interest" is not concerned with "preserving the integrity of the courts."

55

*Id.* at 30.  Instead, the "salient issue" is "whether the Government's later efforts to terminate the prosecution" are "tainted with impropriety."  *Ibid.*  Because the "decision to terminate" the *Rinaldi* prosecution was based on sound governmental policy and was not "motivated by considerations … clearly contrary to manifest public interest," the district court abuse its discretion in denying the motion.  *Id.* at 30.

The same result must follow here.  The United States dismissed this case pursuant to its policy of ensuring just prosecutions.  Pp. 52, *supra.*  That policy unquestionably favors the public interest, so the district court was required to grant the Rule 48(a) motion, even though it was filed after sentencing and even though the district court disagreed with the United States' application of its sound policy.

This Court's decision in *Burdeau* further instructs that the timing of the United States' motion is beside the point.  In *Burdeau,* the defendant committed an armed robbery while intoxicated and was charged with both robbery and the use of a gun in the commission of a felony.  *Burdeau,* 168 F.3d at 354.  In exchange for dismissal of the gun charge, he "entered a conditional plea agreement" to the robbery charge "that limited his sentence to a ten-year maximum."  *Ibid.*  He then

56

withdrew his plea so he could "raise a legal defense that … he could not have formed the intent required by the robbery statute." The district court struck the defense, and defendant ultimately was convicted of both the robbery and gun charges. *Ibid.* He was sentenced to five years for the gun charge and more than ten years for the robbery charge, which this Court noted "serve[d] to almost double his time in prison [and] does not appear to be a fair or proportionate penalty." *Ibid.*

Although this Court affirmed the defendant's conviction, it encouraged the United States to "consider making" a Rule 48(a) motion in order to "dismiss the gun count" and reduce defendant's sentence. *Burdeau*, 168 F.3d at 359. It decided to "withhold issuance of the mandated for a period of sixty days" to allow the United States to file a Rule 48(a) motion. *Ibid.*

*Burdeau* establishes three controlling rules. First, the United States may file a Rule 48(a) motion if it believes a sentence is too long and tainted by "unusual facts" or "unfairness," and a district court may grant the motion. *Burdeau*, 168 F.3d at 359. Such is the case here. As the United States explained at the August 4 hearing, it believed that

57

Kirk's conviction and sentence did not "meet[] the end of justice." JER-78.

Second, *Burdeau* recognizes that the United States, not the district court, has the authority to determine whether the injustice of a sentence warrants dismissal under Rule 48(a). Although the district court in *Burdeau*—like any district court not bound by a mandatory minimum or maximum—presumably believed its sentence was just, this Court disagreed and urged the United States to reject the district court's sentence and a file Rule 48(a) motion in the interest of justice. This Court wanted the United States to argue that justice favored complete dismissal for the gun charge as opposed to a prison sentence. The United States believes the same outcome is warranted for Kirk's Section 242 charge here.

Third and most importantly, *Burdeau* instructs that the timing of the United States' Rule 48(a) motion does not support the district court's decision to deny it. *Burdeau* blessed a post-appeal (but pre-mandate) Rule 48(a) motion in the interests of justice. Here, the United States filed a Rule 48(a) motion far earlier—before appellate briefing even began. The district court denied the uncontested Rule 48(a) motion because

58

"nothing ha[d] changed" since the United States moved to dismiss the felony charge "except the sentence." JER-88. But that was also true in *Burdeau*. Although "nothing ha[d] changed" between the defendant's conviction and this Court's rejection of his appeal, this Court nevertheless urged the United States to file a Rule 48(a) motion.

The district court did not mention *Burdeau* and instead relied exclusively on an unpublished decision from an out-of-circuit district court, *United States v. Thorpe*, No. 13-131-1, 2023 WL 2139399 (D.D.C. Feb. 21, 2023), in determining that it should not grant the United States' Rule 48(a) motion "because its purpose was to reduce the defendant's sentence." JER-87. But *Thorpe* is not good law in this Circuit. Its holding that "the Government cannot circumvent the Court's sentencing authority by waiting until after a sentence has been imposed to selectively dismiss charges," 2023 WL 2139399, at *4, flatly contradicts *Burdeau's* endorsement of post-sentencing selective dismissals. Just as "a judge in our system does not have the authority to tell prosecutors which crimes to prosecute," he lacks authority to tell prosecutors "when to prosecute them." *See United States v. Giannttasio*, 979 F.2d 98, 100 (7th Cir. 1992).

59

Rule 48(a) was designed reflects the public interest in balancing the United States' power to prosecute and the Judiciary's power to sentence. It was "not promulgated to shift absolute power from the United States to the Judicial Branch … The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975). The district court accordingly abused its discretion in determining that the timing of the United States' motion overrode the United States' "absolute" discretion. *Id.* at 514.

## C. The public interest favored dismissal, even in the absence of new evidence.

The district court appropriately recognized that even after sentencing, "[t]here are still circumstances in which the United States' duty to do justice takes precedent [sic] over the Judiciary's interest in its sentences being carried out." JER-90 (cleaned up). For example, it suggested that "new evidence" that creates reasonable doubt as to a defendant's guilt justifies a post-sentencing Rule 48(a) motion. Still, "new evidence" bearing on guilt or innocence is not the only justification for a post-sentencing Rule 48(a) motion. The public interest supports

60

granting an uncontested Rule 48(a) motion whenever the United States believes that continued prosecution is unjust. Pp. 48-54, *supra.*

The district court determined that there was minimal public interest in allowing the United States to exercise its prosecutorial discretion because "nothing has changed" between Kirk's conviction and the filing of the United States' Rule 48(a) motion except for the imposition of Kirk's sentence. JER-887. But there is no requirement that the United States submit "new evidence" or develop "new arguments" when it files a post-sentencing Rule 48(a) motion. JER-88. The United States' development of "misgivings" about the fairness of Kirk's trial, following its close review of the case, were enough to justify abandoning the Kirk's prosecution. JER-87. Put differently, the prosecutors are allowed to change their minds. Under the district court's contrary rule, the United States' prosecutorial discretion is frozen at and terminates with sentencing.

This is a factually close case—one where "reasonable minds can differ." JER-67-68. In light of what it perceives as indictment and trial errors, the United States reasonably determined that felony charges and imprisonment were unwarranted. It exercised its prosecutorial

61

discretion in entering into a post-conviction plea agreement preserving the misdemeanor conviction and—when the district court rejected that agreement—filing an uncontested Rule 48(a) motion. In short, the United States believes that a sentence of incarceration is unjust and against the public interest. The district court disagreed, but its "balancing of various legal, practical, and political considerations, none of which is absolute, is the very essence of prosecutorial discretion." *Morrison v. Olson*, 487 U.S. 654, 708 (1988) (Scalia, J., dissenting). "To take this away is to remove the core of the prosecutorial function" and to abuse judicial discretion. *Ibid.*

62

## CONCLUSION

The Court should reverse the order denying the Government's uncontested motion to dismiss and remand with instructions directing the district court to vacate the judgment and dismiss the case with prejudice.

DATED:  May 13, 2026.                    Respectfully submitted:

HARMEET K. DHILLON
 Assistant Attorney General

JESUS A. OSETE
 Principal Deputy Assistant Attorney
 General

ROBERT J. KEENAN
 Acting Deputy Assistant Attorney
 General

/s/Joshua R. Zuckerman
ANDREW G. BRANIFF
JOSHUA R. ZUCKERMAN
KELSEY E. MCGEE
 Attorneys
 Civil Rights Division
 U.S. Department of Justice
 950 Pennsylvania Avenue, NW
 Washington, D.C.  20530
 (202) 532-3803
 Joshua.Zuckerman@usdoj.gov

63

## STATEMENT OF RELATED CASES

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)**  Nos. 25-3607, 25-5125, 25-5200

The undersigned attorney or self-represented party states the following:

[ x ]  I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** /s/ Joshua R. Zuckerman    **Date** May 13, 2026

## CERTIFICATE OF COMPLIANCE

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** Nos. 25-3607, 25-5125, 25-5200

I am the attorney or self-represented party.

**This brief contains 12,199 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[  ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Joshua R. Zuckerman    **Date** May 13, 2026